THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BEETHOVEN H. ASKEW, Defendant-Appellant.

First District (2nd Division)    No. 78-1435

Opinion filed July 31, 1979.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Paul C. Gridelli, and Christopher Cronson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

After a bench trial defendant Beethoven Askew was convicted of criminal nonsupport of wife and child. (Ill. Rev. Stat. 1975, ch. 68, par. 24.) He was sentenced to a term of one year probation and ordered to pay $50 per month for 3 years for the benefit of the Illinois Department of

Public Aid. The issues for review are (1) whether the issue of paternity may be litigated in a criminal proceeding under this Act, (2) whether the trial court erred in denying defendant's motion to order blood tests, (3) whether defendant presented sufficient evidence to overcome the presumption that he is the father of a child born to his wife during marriage, and (4) whether defendant's waiver of his right to a jury trial was knowingly and understandingly made.

The complaint filed against defendant asserted that he had committed the offense of nonsupport of his wife Jacquelyn Askew and his child Deshawn Askew by failing to provide support after May 1, 1976. Immediately prior to trial, the court denied a defense motion for blood tests after agreeing with the prosecuting attorney's argument that the motion constituted improper discovery during a criminal proceeding.

At trial the complainant testified that she and defendant were married in 1968, and one child of the marriage, Deshawn, was born September 26, 1975. She further stated defendant had not offered any support for her or her child since May 1, 1976, and she had been living on public aid.

The complainant testified she separated from her husband in 1972; although they had lived together in 1974 for about 6 months, she had not lived with him since. There was no testimony as to whether she had lived with him in November and December of 1974, the only possible months of conception. When she asked defendant for support, he told her he had his own family to take care of and asserted the child was not his.

Defendant testified he had been separated from his wife since March 1971 and had not resided with her since. He stated that his wife left him, and when he contacted her, she refused to live with him. He denied that Deshawn Askew was his child.

■■ The first question to be decided is whether the issue of paternity may be litigated in a criminal proceeding pursuant to section 24 of the Non-Support of Spouse and Children Act (Ill. Rev. Stat. 1975, ch. 68, par. 24), under which defendant was convicted; it provides in relevant part as follows:

> "Every person who shall, without any lawful excuse, neglect or refuse to provide for the support or maintenance of his spouse, said spouse being in need of such support or maintenance, or any person who shall, without lawful excuse, desert or neglect or refuse to provide for the support or maintenance of his or her child or children under the age of 18 years, in need of such support or maintenance, shall be deemed guilty of a Class A misdemeanor * * *."

The statute does not explicitly provide for a determination of

paternity; however, it does state that a parent is responsible for the support of *"his* or *her* child" (emphasis added), which suggests that the determination of paternity is implicit in the Act. See generally Annot., 81 A.L.R.3d 1175, 1178.

The cases in Illinois have not resolved the issue. In *People v. House* (1930), 259 Ill. App. 27, 29, the court held that in a criminal prosecution the defendant-husband could not raise the issue of paternity, citing *Zachmann v. Zachmann* (1903), 201 Ill. 380. However, *Zachmann* is authority only for the proposition that there is a presumption of legitimacy of a child born during wedlock, even if conception occurs prior to marriage, and it does not hold that the presumption of legitimacy is a conclusive one. In *People v. Powers* (1950), 340 Ill. App. 201, 91 N.E.2d 637, defendant's only defense in the criminal action was that he was not the father of his wife's child. Defendant testified his wife was mentally ill and that he did not live with her during the possible period of conception. The court held that such unsupported testimony was insufficient to overcome the presumption of paternity and affirmed the conviction. Thus, although the court rejected defendant's evidence as being insufficient, it apparently did consider paternity as a defense under the statute.

Cases from other jurisdictions have held that a determination of paternity may be made for the first time in criminal prosecutions for nonsupport. (*State v. Carter* (1963), 175 Ohio St. 98, 99, 191 N.E.2d 541, 542; *State v. Medley* (1960), 111 Ohio App. 352, 353-56, 172 N.E.2d 143, 145-46.) It has also been held that paternity is an issue which must be proved beyond a reasonable doubt. (*Hunt v. State* (1960), 101 Ga. App. 126, 127, 112 S.E.2d 817, 818; *State v. Williams* (Mo. App. 1961), 349 S.W.2d 375, 378; *State v. Brown* (Mo. App. 1969), 446 S.W.2d 498; *State v. Summers* (Mo. App. 1972), 489 S.W.2d 225, 227; also see Annot. 46 A.L.R.2d 1001 (1956).) In *Williams* the court stated:

> "Insofar as the contention that paternity is an element is concerned, we agree with appellant that it is. Surely the legislature never intended [the statute] to require a man to support any one else's children. The very language of the statute confirms this when it states '* * * or if any man or woman shall, without good cause * * * refuse to provide * * * for *his* or *her* child or children * * *.' " (Emphasis added.)

In *State v. Brown* the court stated:

> "It is well established that to support a conviction under this statute the state is required to establish every element of the offense. [Citation.] And it is likewise true that paternity is an element. [Citation.] Those facts, together with the unquestioned jurisdiction

of the trial court over the person of the appellant and the offense charged, make it obvious the trial court had jurisdiction to make the determination of the constituent element paternity. Had the legislature desired to require a separate judicial determination of paternity to be made prior to trial upon a charge brought under this section it could have easily so provided."

■■ We also find that if the court has the authority to make a determination of paternity, defendant must be accorded the same protections, including blood tests, which are available in civil proceedings.* This is particularly true because in a civil proceeding the relevant standard of proof is a preponderance of the evidence (*People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 358 N.E.2d 1160), while in a criminal proceeding the standard is proof beyond a reasonable doubt. In *State v. Summers,* the court stated the rationale as follows:

"In a criminal case it would be a denial of justice to refuse a defendant his motion to have blood tests made of a mother and her child in a proceeding where he is accused by the mother of failure to support the child and in which the question of paternity is an essential element, while at the same time granting him that right in a civil action in which paternity is an issue and the mother seeks a money judgment for non-support of an illegitimate child." 489 S.W.2d 225, 229.

Because mere denial by the husband that he had access to his wife has been held to be insufficient proof to overcome the presumption of legitimacy of a child born during wedlock (*People v. Powers*), precluding defendant from introducing blood tests also has the effect of denying him a defense. This constitutes a violation of due process. *People v. Graham* (1977), 48 Ill. App. 3d 689, 692, 363 N.E.2d 124.

The cases cited by the State are not persuasive. In *State v. Eli* (N.D. 1954), 62 N.W.2d 469, the court found that defendant's failure to submit himself to a blood test proved fatal to his motion to take a blood test of the complaining witness. However, North Dakota had no statute authorizing the taking of blood tests in any proceeding. Additionally, there was no showing that the child was available for testing as the mother stated she no longer had the child. In *Parsons v. Parsons* (1953), 197 Ore. 420, 253 P.2d 914, there was an action for divorce on grounds of adultery, and the court denied the use of blood tests. California law, however, provided that there was a conclusive presumption that the issue of a wife

---

*Section 1 of the paternity act (Ill. Rev. Stat. 1975, ch. 106¾, par. 1) provides that in a civil action the court may order blood tests either on its own initiative or upon the motion of any party to the action. And it has been held that even multiple blood tests are proper in a civil action. *People ex rel. Yarn v. Yarn,* 73 Ill. App. 3d 454, 392 N.E.2d 606 (1979); *People ex rel. De Vos v. Laurin,* 73 Ill. App. 3d 219, 391 N.E.2d 164 (1979).

who was cohabiting with her husband is legitimate; in Illinois the presumption is merely rebuttable. In the case of *Dale v. Buckingham* (1949), 241 Iowa 40, 40 N.W.2d 45, there was no statute providing for the taking of blood tests, and the general statute which did provide that a court could order certain physical examinations was merely discretionary. We find that a denial of the motion for blood tests prejudiced defendant's right to a fair trial, and the cause must be remanded for a new trial.

■■ The State contends that the motion for blood tests, coming shortly before trial, was too late. However, in *People v. Stoeckl* (1956), 347 Mich. 1, 3-4, 78 N.W.2d 640, 642, the court stated that the short period of time needed for blood tests would not interfere with the interests of prompt justice and held that the denial of a motion for a blood test made immediately prior to trial was an abuse of discretion.

A continuance in order to take a blood test may also be analogized to a motion for a continuance in order to obtain a defense witness. In *People v. Timms* (1978), 59 Ill. App. 3d 129, 135, 375 N.E.2d 1321, the court quoted with approval from *People v. Robinson* (1973), 13 Ill. App. 3d 506, 510, 301 N.E.2d 55, wherein the court stated the granting or denial of a continuance to obtain evidence or procure a witness is discretionary; when reviewing the exercise of the trial court's discretion, the court must determine whether the defendant had acted diligently in his attempt to obtain the evidence, whether the evidence would be material and might affect the outcome of the case, and whether defendant had been prejudiced in his right to a fair trial. Here, the case had been pending for approximately 14 months, and it had been continued four times: twice at the motion of the State and twice at the motion of defendant. Although it appears that defendant had ample time prior to trial to make his motion for blood tests and was possibly not diligent in making the motion, the evidence might obviously be material to the case and could well affect its outcome.

■■ The next issue to be decided is whether, absent blood tests, defendant was able to present sufficient evidence that he was not the father of the child. In civil cases in Illinois, there is a strong presumption that a child born during marriage was fathered by the husband; the presumption is not conclusive and it may be rebutted by clear, convincing and irrefragable proof. (*In re Ozment* (1978), 61 Ill. App. 3d 1044, 378 N.E.2d 409.) The presumption may be rebutted by either conclusive proof that the husband had no access to his wife during the period of possible conception (*In re Ozment*) or by blood tests (Ill. Rev. Stat. 1975, ch. 106¾, par. 5).

Because of our holding in this matter, we need not consider defendant's other argument that he had not knowingly and understandingly waived his right to a jury trial. For these reasons, the

judgment of the circuit court of Cook County is reversed and remanded for a new trial.

Reversed and remanded for a new trial.

DOWNING and PERLIN, JJ., concur.